UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No. 11 C 4448 |
| FUNDS IN THE AMOUNT OF $239,400, | Judge James B. Zagel |
| Defendant, | |
| John Valdes and Tracey Brown, | |
| Claimants. | |

## MEMORANDUM OPINION AND ORDER

This is an *in rem* civil forfeiture action brought by the United States pursuant to 21 U.S.C. § 881(a)(6), for forfeiture of funds in the amount of two hundred thirty-nine thousand four hundred dollars ($239,400). The Government alleges the funds were furnished in exchange for a controlled substance and were intended to be used to facilitate narcotics trafficking, in violation of 21 U.S.C. § 801, *et seq*. John Valdes and Tracey Brown have answered the government's complaint and filed claims to contest the forfeiture pursuant to Fed.R.Civ.P. G(5).

Currently before me are the government's motions to strike Claimants' claims to the funds pursuant to Fed.R.Civ.P. G(8)(c) and for summary judgment as to the forfeiture pursuant to Fed.R.Civ.P. 56. For the following reasons, the government's motions are granted.

### BACKGROUND

The facts of the case are set forth in detail in a Memorandum Opinion and Order entered on June 5, 2012, in which I denied Claimants' motion to suppress certain evidence. I assume the reader's familiarity with the opinion. Recounted briefly here, the material facts are as follows.

1

The case arises out of an encounter between law enforcement officers assigned to the DEA Transportation Interdiction Group at Amtrak Union Station in Chicago, Illinois and Claimant John Valdes that resulted in the seizure of $239,400 in U.S. currency. On February 11, 2011, at approximately 1:30 pm, DEA Special Agent Robert Glynn ("SA Glynn") and DEA Task Force Officers ("TFOs") Dennis Ivanich, Robert Schaller and Michael Tucker, all dressed in plainclothes, went to the first class lounge with the intention of making contact with Mr. Valdes. Mr. Valdes was laid over in Chicago for five hours on a cross country trip from Boston, Massachusetts to Los Angeles, California.

Mr. Valdes's travel itinerary had been flagged as suspicious during a passenger manifest screen because he had a one-way ticket for a private sleeper car that was purchased via a credit card issued to another individual, George Brown, shortly before the train's scheduled departure time for $824.00. These characteristics – the lack of a return ticket, the last minute purchase in someone else's name, the high price paid, and the private sleeper car – fit the profile of a drug courier, and the officers were seeking to investigate further.

The officers located Mr. Valdes in the first class lounge, and the parties disagree as to how the encounter then unfolded. The nature of the officers' conversation with Mr. Valdes, what precisely was said, and whether Mr. Valdes voluntarily consented to the search of his bag were all the subject of an evidentiary hearing held on March 14, 2012 and April 16, 2012. Ultimately, I concluded that the search was valid, and I denied a motion to suppress the evidence it yielded.

Upon searching one of Mr. Valdes's bags, the officers found four packages of U.S. currency. $239,400 was found in total; the packages contained 10,000 twenty dollar bills. The four bundles of cash were each first wrapped in plastic saran wrap, then in tin foil, then each bundle was held together by rubber bands. These bundles were then wrapped in brown paper

bags. "Rudy," a narcotics-sniffing dog, was brought to conduct an odor investigation of Mr. Valdes's bag. Rudy alerted for the presumptive presence of narcotic odor on the bag, though no drugs were found. Rudy did not alert anywhere else in the lounge.

Mr. Valdes acknowledged that the money was his and that he was responsible for packaging it in this manner. He asserted that he was traveling with it to purchase computer parts in California for his computer recycling business. To this date, Mr. Valdes has not come forward with any tax filings, business records, or any other documents to substantiate that assertion.

The officers told Mr. Valdes that he would be free to go, but that they would be seizing the cash for further investigation. After providing the officers with personal identification and contact information, Mr. Valdes was given a receipt for the seized currency and was allowed to leave.

On June 30, 2011, the government filed this *in rem* civil forfeiture action against the $239,400 in U.S. currency pursuant to 21 U.S.C. § 881(a)(6). Mr. Valdes and his wife, Tracey Brown, answered the government's complaint and filed claims contesting the forfeiture pursuant to Fed.R.Civ.P. G(5). Before me is the government's motion to strike Claimant's answer and claim to the defendant property pursuant to Fed.R.Civ.P. G(8)(c) and for summary judgment as to the forfeiture under Fed.R.Civ.P. 56. As will be discussed in detail below, the government's Rule G(8)(c) motion itself is properly presented as a motion for summary judgment. *See* Fed.R.Civ.P. G(8)(c)(ii)(B).

## DISCUSSION

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed.R.Civ.P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

**A. The Government's Rule G(8)(c) Motion**

The government has moved to strike Claimants' claim (and, I assume, Claimants' answer as well) pursuant to Rule G(8)(c) on the grounds that Claimants lack standing and that they have failed to comply with Rule G(5) and G(6). I begin with the question of standing.

Generally, to establish Article III standing, a plaintiff must demonstrate: (1) an "injury in fact" that is concrete and particularized and either actual or imminent; (2) that the injury is fairly traceable to the challenged action by the defendant; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1147 (2013).

4

At the pleading stage, the bar for establishing Article III standing is low. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992); *U.S. v. Funds in the Amount of $574,840*, 719 F.3d 648, 651 (7th Cir. 2013); *U.S. v. $196,969 U.S. Currency*, 719 F.3d 644, 646 (7th Cir. 2013). A defendant may come forward with evidence challenging a plaintiff's claim to standing, however, at which point the plaintiff then bears the burden of coming forward with competent proof of his or her own that standing exists. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009).

Standing analysis in the context of civil forfeitures is faced with several wrinkles arising from the relatively unusual procedural posture of such cases. Instead of a defendant challenging a plaintiff's standing, as is the typical case, in a civil forfeiture, the defendant is a thing. *See $574,840*, 719 F.3d at 652; *$196,969*, 719 F.3d at 646. The person contesting the forfeiture, the claimant, is like a plaintiff, and the true plaintiff in the forfeiture action, the government, is like a defendant challenging the claimant's standing to contest the forfeiture.

These distinctions might have prompted some uncertainty as to the applicability of traditional standing analysis under such circumstances. Supplemental Rule G of the Federal Rules of Civil Procedure, however, expressly addresses the issue of standing within the context of civil forfeitures. The Seventh Circuit has not yet had an opportunity to set forth a complete standing analysis under Rule G, but guidance is provided in the Court's recent decisions in two companion cases cited above, *U.S. v. Funds in the Amount of $574,840* and *U.S. v. $196,969 U.S. Currency*.

Independent of Rule G, one would expect that pleading standing as a claimant in a civil forfeiture case would require alleging simply that the government should be ordered to turn over to the claimant property it is holding that belongs to him or her. *See $196,969*, 719 F.3d at 646.

5

Independent of Article III standing, Rule G(5) provides further that a person wishing to contest a forfeiture must file a claim in the court where the action is pending which identifies the specific property claimed, identifies the claimant and states the claimant's interest in the property, is signed by the claimant under penalty of perjury, and is served on the government. Fed.R.Civ.P. G(5)(a). "[S]atisfaction of the requirement that Rule G(5) imposes on the claimant establishes the claimant's standing under Article III *a fortiori*, for the rule requires more than the simple allegation of standing that, unless challenged, is all that Article III requires." *$196,969*, 719 F.3d at 646.

Claimant Valdes has satisfied Rule G(5). In a verified claim served on the government, Claimant Valdes identified himself, the property claimed (approximately $239,400 in United States currency), and stated that he has "an ownership and/or possessory interest in, and the right to exercise dominion and control over, all or part of the defendant property." I might have considered this statement of Claimant's interest in the property improperly vague, but in a verified amended response to special interrogatories served by the government (more on "special interrogatories" in a moment), Claimant later stated, "I am the owner of the defendant property, and therefore have an ownership interest and a possessory interest in all of the defendant property." This verified amended response, along with the original verified claim, satisfies the requirements of Rule G(5).[1] *See $196,969*, 719 F.3d at 646; *$574,840*, 719 F.3d at 653. Thus, and *a fortiori*, Article III standing was sufficiently pled. *See $196,969*, 719 F.3d at 646; *$574,840*, 719 F.3d at 651.

---

[1] Claimant Brown's verified claim contains the same vague "ownership and/or possessory interest" language, but her claim was not amended to clarify it. The use of this imprecise language may well have been sufficient ground on which to strike Claimant Brown's claim for failure to comply with Rule G(5). I conclude, however, that adjudicating Ms. Brown's claim on that basis is not necessary. Ms. Brown's interest in the funds is derivative of her husband's purported legitimate interest in the funds as his wife. As will be discussed, Mr. Valdes's claim does not survive the government's Rule G(8)(c) motion. Ms. Brown's claim then fails for the same reasons.

But that does not end the inquiry. "It is always open to a party to contest standing by proving facts that contradict his opponent's allegations of standing." *$574,840*, 719 F.3d at 652; *see also Apex Digital*, 572 F.3d at 444. Beyond the requirements of Rule G(5), the government cannot simply demand that Claimant prove that he has standing. *$196,969*, 719 F.3d at 646. But the government can certainly respond to the claim with evidence tending to show that Claimant does not in fact possess standing. *See id*. Indeed, Rule G expressly provides for a mechanism by which the government may seek to obtain such evidence through discovery: "The government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and before discovery is closed." Fed.R.Civ.P. G(6)(a); *see also $196,969*, 719 F.3d at 647. Rule G(6)(b) requires responses to these interrogatories.

Having acquired what it believes to be sufficient evidence to controvert a claimant's claim to standing, the government might ordinarily proceed along the lines spelled out by the Court in *Apex Digital*, raising a factual challenge to standing requiring a rebuttal from the claimant. *See Apex Digital*, 572 F.3d at 444-45. But there is a procedure to achieve a similar result specifically in the civil forfeiture context that is expressly provided for in Rule G. "At any time before trial, the government may move to strike a claim or answer for failing to comply with Rule G(5) or (6), or because the claimant lacks standing." Fed.R.Civ.P. G(8)(c)(i). This motion "may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence." Fed.R.Civ.P. G(8)(c)(ii)(B); *see $574,840*, 719 F.3d at 652-53.

The rule's use of the word "standing," the Seventh Circuit notes, is "unfortunate" because

striking a claim is a decision on the merits, and questions of standing generally result in decisions on jurisdictional grounds. *See $574,840*, 719 F.3d at 653. In this sense, striking a claim due to a lack of standing under Rule G(8)(c)(ii)(B) differs from a dismissal awarded upon a successful factual challenge to standing; again, the former is a merits decision, and the latter is jurisdictional. *Compare $574,840*, 719 F.3d at 653 *with Apex Digital*, 572 F.3d at 443-44. In any event, the key point for present purposes is that, when a plaintiff/claimant is confronted with a valid challenge to his standing, be it a traditional factual challenge to standing, or a Rule G(8)(c)(i)(B) challenge to standing, it is no longer sufficient to simply rest on the facial validity of his standing claim.

This point appears to have evaded Claimant. It is true that, while "[t]he government can move to strike a claim to property on the ground that the claimant has no interest in it, [ ] it cannot just say to him: prove it's your property." *$574,840*, 719 F.3d at 653. A Rule G(5) compliant claim is "evidence," and "shifts to the government the burden at least of production of evidence that the claim is invalid." *Id*. But with the government having come forward with such evidence and a Rule G(8)(c)(i)(B) motion, Claimant is now confronted with a higher hurdle: can he "carry the burden of establishing standing by a preponderance of the evidence?" Fed.R.Civ.P. G(8)(c)(ii)(B).

The government has presented no direct evidence that Claimant's claim to ownership is illegitimate. Indeed, the only direct evidence of Claimant's ownership in the record – Claimant's verified claim of ownership – cuts the other way. The government has, however, presented considerable and compelling circumstantial evidence that Claimant has no legitimate interest in this money.

First, there are the circumstances under which Claimant was identified by the DEA

agents and the money was found. Claimant's travel itinerary was flagged as suspicious during a passenger manifest screening; it fit the profile of a drug courier. Claimant had a one-way ticket for cross-country travel from Boston to Los Angeles. The ticket was purchased shortly prior to the train's scheduled departure and was purchased at the unusually high price of $824.00. The ticket was purchased by a credit card issued to another individual.

Next, there is the condition in which the money was found. $239,400 in cash was found in Claimant's bag in four packages wrapped in cardboard paper. The bundles of money were first wrapped in plastic. Then each of the four plastic bundles was wrapped in tin foil. Finally, each bundle was held together by rubber bands and then wrapped with brown paper bags. The bulk of the cash was in the form of twenty-dollar bills; 10,000 twenty dollar bills totaled $200,000.

One of the agents and his narcotic detector dog, "Rudy," conducted a narcotic odor investigation on Claimant's bag. Rudy gave a positive alert for the presumptive presence of narcotic odor on the bag and did not alert anywhere else in the hallway.

Finally, there is Claimant's limited, and ultimately incredible, explanation for his possession of the cash and the way it was packaged. Claimant asserts that he was traveling to Los Angeles with the money to purchase computer equipment for his computer recycling business. Claimant has not come forward with any business records, tax filings or any other documentation that might substantiate this assertion. There also appears to be no explanation in the record for carrying that amount of money in cash, or for packaging it the way Claimant packaged it.

The question of the proper weight to afford Claimant's lack of a credible explanation for the cash merits some attention. Claimant's position may well be, not that he has no legitimate

explanation for the cash, but that he is simply not required to provide one, at least at this stage of the proceedings. As I explained to Claimant's counsel on more than one occasion in open court, that view is folly. With respect to pleading standing in the first instance, Claimant is correct; his possession and verified, unequivocal claim of ownership is enough to establish Article III standing. But the government has now challenged that claim to standing with evidence and a Rule G(8)(c) motion, and, pursuant to the Rule, the Court is to determine whether *Claimant* can "carry the burden of establishing standing by a preponderance of the evidence." Claimant may rest on his verified claim if he wishes, but there is no basis for the assertion that that will necessarily be sufficient to carry his preponderance burden in the face of the government's Rule G(8)(c) motion.

Under Rule G(8)(c), the government may move to strike a claim because the claimant lacks standing, or because he has failed to comply with Rule G(5) (requiring the verified claim of interest in the property) or Rule G(6) (requiring responses to the government's special interrogatories). I note again that I conclude that Claimant has indeed complied with Rule G(5) for the reasons set forth above. With respect to the government's special interrogatories under Rule G(6), at a hearing on November 29, 2011, I agreed with Claimant that some were beyond the scope permitted by Rule G(6)(a) and concluded that responses to these were not required. I concluded that others, however, clearly were within the scope.[2] With respect to those interrogatories, I noted that several of Claimant's responses were essentially "non-responses."

I might have accordingly granted the government's motion to strike for failing to comply with Rule G(6), concluding that Claimant had failed to answer the government's special

---

[2] See, for example, Government's Special Interrogatory No. 4: "If you have any records, documents, or tangible items that reflect or are relevant to your interest in the defendant currency or your claim to the defendant currency, please identify each piece of evidence with specificity, including the name, address, and telephone number of its custodian."

interrogatories.³ *See* Fed.R.Civ.P. G(6)(b). Instead, I thought it prudent to deem the responses compliant, but to also make clear to Claimant's counsel that the non-responsive nature of the responses permitted an adverse inference with respect to the validity of Claimant's claim to standing. This adverse inference has now been brought to bear in my consideration of the government's Rule G(8)(c) motion – under subsection (8)(c)(ii)(B) of the Rule to be precise.

Against the strong circumstantial evidence presented by the government, Claimant offers nothing but his verified claim to ownership. On these facts, assessed under a preponderance standard as prescribed by Rule G(8)(c)(ii)(B), this is insufficient. Having considered all of the evidence, I conclude that the government is entitled to have Claimants' claim (and answer) stricken on the ground that Mr. Valdes cannot carry the burden of establishing standing by a preponderance of the evidence.

**B. The Government's Motion for Summary Judgment as to the Forfeiture**

The Government brings this action pursuant to the civil forfeiture provision of the Controlled Substances Act, 21 U.S.C. § 881(a)(6). This provision subjects to forfeiture "[a]ll moneys ... furnished or intended to be furnished by any person in exchange for a controlled substance ..., all proceeds traceable to such an exchange, and all moneys ... used or intended to be used to facilitate [such an exchange]." The defendant funds are therefore subject to forfeiture if they represent the proceeds of an illegal drug transaction or were intended to facilitate such a transaction. Under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C.

---

³ Claimant appears to be of the view that Rule G(6)(b) requires responses to Rule G(6) special interrogatories only insofar as the interrogatories go to the claimant's ability to plead Article III standing and satisfy the requirements of Rule G(5). That is not what the Rule says. The special interrogatories are indeed limited in their scope, but they are not so limited as Claimant insists. The interrogatories must go to "the claimant's identity and relationship to the defendant property." Such information will likely "bear on the claimant's standing" as the Rule G(6) Advisory Committee Note contemplates, but there is nothing to suggest that the interrogatories may inquire no further than the bare minimum information necessary to adequately plead standing. Details substantiating a claimant's connection to a piece of property that may well be unnecessary for purposes of pleading Article III standing and satisfying Rule G(5) may nevertheless go to a claimant's "relationship to the defendant property," and interrogatories seeking such details are fair game under Rule G(6)(a).

§ 983(c)(1), the Government must demonstrate by a preponderance of the evidence that the defendant funds are subject to forfeiture. *See also United States v. Funds in the Amount of $30,670.00,* 403 F.3d 448, 454 (7th Cir.2005). Relevant here, "[i]f the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3).

The totality of the circumstances here establishes a substantial connection between the cash and illegal narcotics activity. *Cf. U.S. v. Funds in the amount of $40,000*, 2010 WL 5146595, *11 (N.D.Ill. Dec. 13, 2010); *see also U.S. v. Funds in the Amount of $30,670*, 403 F.3d 448, 467 (7th Cir. 2005). This conclusion is supported by the same evidence that undermined Claimant's claim to standing described above. A positive dog alert serves as "strong probative evidence of illegal narcotics activity" supporting summary judgment in a forfeiture action. $*30,670*, 403 F.3d at 470. In addition to the dog alert, there is the sheer amount of cash and its denominational form, the unusual way in which it was packaged, Claimant's suspicious travel arrangements, and the absence of any credible explanation for any it. In my view, this is sufficient to establish a substantial connection between the cash and illegal narcotics activity by a preponderance of the evidence.

*****

In sum, Claimants' answer to the government's complaint and claim to the defendant property are stricken pursuant to Rule G(8)(c) because I conclude that Claimants have not carried the burden of establishing standing by a preponderance of the evidence. Having granted that motion, all that remains is the government's complaint for forfeiture of the defendant property –

property to which there is no valid third-party claim. Under the circumstances, and, for the reasons discussed above, I conclude that the government has proven a substantial connection between the defendant property and illegal narcotics activity by a preponderance of the evidence, and the defendant funds are thus forfeitable to the United States.

## **CONCLUSION**

For the foregoing reasons, the government's motions to strike claims and for summary judgment are granted.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: October 7, 2014